will hear first from Mr. Hamilton. Good afternoon, Your Honors. May it please the Court, Robert Hamilton on behalf of the appellant, Craig Donnelly, if I could reserve two minutes for rebuttal. Mr. Donnelly was found incompetent to proceed on November 18th, 2021 in order committed to the Attorney General for hospitalization to determine whether he can be restored to competency. To date, he has not been hospitalized and has been instead held at a pretrial detention center awaiting a bed. The statute in this case, and the issue in this case is statutory interpretation of 18 U.S.C. 4241D, contains temporal protections for pretrial defendants who are presumed innocent but have lost the protections of the Speedy Trial Act due to a finding of incompetency. These temporal protections have been severely undercut by the district court's interpretation of the statute and the statute that the government interpretation. Counsel, can I ask you, before we get into a very interesting issue, what is on appeal to us? Because you filed a motion to dismiss the indictment below, correct? Correct. And then you appealed the motion to dismiss, the denial of the motion to dismiss the indictment. Correct. Normally, an appeal of a motion to dismiss the indictment is we don't have interlocutory jurisdiction to address that. Is there an exception here or are you appealing, I mean, are you really challenging something other than the dismissal of the indictment? Essentially, the dismissal of the indictment is the remedy for what's going on. But what's being appealed is his continued detention under the commitment statutes. And an order of commitment, I think it's beyond dispute. And I don't think the government contested in this case that the interlocutory appeal was proper. But an order of commitment can be appealed in an interlocutory manner. But that's so your position is even though it was framed up as a, and I think you're right, that's sort of how I saw the case too. But I just wanted to, because you're right, neither party sort of talked about this. I just want to make sure we're talking about that. And which sort of begs the question of whether we could even give you the remedy, even assuming we took the rest of your arguments, would we even have jurisdiction to say that it should be dismissed? Because then wouldn't we be getting into an interlocutory order that we shouldn't, that we wouldn't normally have jurisdiction over? I don't believe so because the continued confinement, the commitment confinement is addressed in 4241D. And it foresees a situation where the time limit has run, the reasonable period. But at the same time, there has not been a finding that the person's been restored. And in other words, I think the language used is that the case cannot proceed. And then the person can be moved into 4246 or 4248. And in 4246, it talks about cases dismissed based on mental health. And so I don't think that... So you, I mean, is it simplistic enough to say as long as we're looking at dismissal as a remedy, that would still be before us. We're not looking at whether the indictment is sufficient. We're looking at whether it's a remedy for a condition of confinement that we would have jurisdiction for. That's correct. And when I look at the case, it's really for the statutory aspect of it. It's the practical remedy. It's the practical thing that happens when a person can't proceed. And I'm not arguing it be dismissed with prejudice. It's dismissed without prejudice. And a person that didn't mean to take up that much time on this issue, but I wanted to make it clear. Jumping into the merits of it. Let's say I believed that the four months only applied to the limitation on hospitalization. What does that do for your case? What is the argument that there must be some sort of reasonable time where he has to, from commitment to hospitalization. And as I understand it, that hasn't happened here. Is that correct? Has he still not been hospitalized? Still not hospitalized. Okay. So what, how do we address that for, if I were to say the four months only applies post hospitalization, what is your argument for why you should still receive relief? And so assuming you're saying you find my argument not plausible, my interpretation not plausible, I think the quandary we get into about him being stuck in this black hole brings in the constitutional, doctrine of constitutional avoidance and rule of lenity. Clark versus Martinez talks about both of those in the, I think both of those apply if we have a plausible interpretation. But if you're finding that our interpretation is not plausible, you get into a due process analysis. And if you think about it practically, it leads to a lot of litigation in these cases. What people, is it one month sitting? If you look at the Ninth Circuit's opinion in Mink, they say weeks or months sitting in custody without any restoration treatment, that's a violation of due process principles in Jackson. And so, But where would we set those limits? I mean, would it be sufficient to say, look, you, Congress said you can only be hospitalized for four months. We don't know what the limit is between commitment and hospitalization, but it shouldn't be more than four months. And here it was more than four months. Would that be simple enough to? That would be simple enough. And when I look at the statute, I feel like our interpretation of the statute simplifies. It completely makes sense because it has this single time limit in the statute. But I agree that if the outer limit of the statute is four months and this court were to say four months max, whether they're sitting or being in the hospital under due process, yes, that would that would be sufficient. Do we ask you? Oh, good. I was going to shift to a different point. So you should go ahead. Do we do we actually have to get into a due process analysis? Can we just say the statute says the attorney general shall hospitalize defendant for no more than four months. And so the statute forces the attorney general to do so. And the attorney general just hasn't followed the statute. I agree that that's where I think the analysis goes. It's there's currently thwarting congressional intent that the statute commitment and hospitalization are intertwined. And you cannot take a scalpel and cut out that one sentence with the time limit and ignore the context, both the specific context and the broader context. And and so I think the plain meaning resolves the issue and the congressional intent. And I would also say, along with the plain meaning, that there's binding precedent that's strong in Quintero. And and I cited I cited Miller v. GAMI for this notion of this notion of the reasoning. The reasoning matters and the reasoning is binding. But within Miller v. GAMI, they cite it's in the concurrence talk about United States v. Johnson. And I apologize for not citing it in the brief. It's 256 F3D 895 and it's at 914. It's an en banc opinion from 2001. And they're talking about this issue of when can you just call something dicta and not follow it in later panels or a district court? And they say where a panel confronts an issue germane to the eventual resolution of the case and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense. As I read the two opinions strong in Quintero, it I stand by what I say in my brief, which is it was necessary. Them finding this four month period applies to commitment and hospitalization was necessary. But that's you don't even have to show that much for this panel to be bound by those prior holdings. But the question I have, counsel is, let's say that we agreed with your statutory argument, I guess I still get stuck on the remedy. I don't see how dismissing the indictment is the proper remedy in this situation. I guess I just need some help from you understanding why you think that's the remedy as opposed to some order from the district court that just says, Listen, Attorney General, you've got, you know, X number of years, you've got the remedy for this violation of the time constraint as opposed to outright dismissal of the indictment. Well, the statute, again, under statutory analysis, the four month period has run and the statute says if the case can't proceed at that time, there hasn't been a finding necessary that he, again, in the four month period, you just need a finding that the person can be restored to competency at some point in the future and you can go longer. But if there is not that finding to start to extend that time period, that, again, I say dismissal is the practical remedy. And that is typically what happens when somebody cannot proceed or cannot be restored to competency. And the other option... Let me just, I'm sorry to interrupt you, but it's the no finding has been made that he cannot, that your client cannot be restored to competency. The problem is just we haven't gotten to the point where that evaluation has been made. I don't see anything in 4241 or any of the other provisions of this act that say, if one of these time limits is violated, the remedy is dismissal of the indictment. You know, we have the speeding trial act, and obviously our decision in Romero, I think it is, poses big problems for you on that front. But there, at least the statute speaks of what the remedy might be for a violation. Here, we just were kind of left at sea. So you interject that, well, the only appropriate remedy is dismissal. And I'm just, why do you say that? That's what I'm stuck on. Because there's not a determination that permits the proceedings to go forward. And that's at the end of, so 4241D and at the end. If at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward. Defendant is subject to provisions of 4246. And if you look in 4246, they talk about a proceeding, a person being released, and they talk, in 4246, references the word dismissal. And so my expectation is that there is a hearing before the court where the court brings in Mr. Donley. There's a determination of whether he's improved or not, and he hasn't. And then in that case, again, I'm saying dismissal is the practical remedy, because dismissal without prejudice is typically what happens when a person can't be restored or hasn't been restored. The other option would be something akin to release. But again, the Speedy Trial Act doesn't apply because he's incompetent. And the Bail Reform Act only applies if somebody is pending trial. And so in Salerno, the Supreme Court found the Bail Reform Act, the restrictions on liberty, are perpetually released and perpetually subject to the provisions of the Bail Reform Act. And so is there a remedy of just releasing him with no conditions? I think that arguably would satisfy him not pending trial and going through these proceedings. But I think practically, in my experience, is when somebody can't proceed because of competency, that they get released. I mean, the case gets dismissed without prejudice. Again, subject, if he regains competency, he'll be subject to charges. Okay. I'm sorry for that. No. We've taken you over. We'll give you some time for rebuttal. Thank you. Good afternoon. May it please the Court. Amy Potter on behalf of the United States. In 4241, Congress made two orders. One order to the district court, which is if someone is found not competent, they shall go to the attorney general. There's no option. Quintero and Strong make it clear. There's no outpatient restoration proceedings. The second provision directs the attorney general, what the attorney general needs to do. And there's two parts to that. They need to hospitalize the defendants. That's important because there's a limited number of facilities where the attorney general can do that. It can't just be any BOP facility. It's a hospital facility. And the attorney general can... Let me just stop you there. Sorry to interject. You're assuming that Congress envisioned commitment and hospitalization to be two entirely distinct things and two entirely distinct time periods. And I guess I don't see any evidence of that, either in the legislative history or in the text of the statute. I'd love for you to expand on your conception of those two things as being separate. Well, I think one thing we can look at is 4241E, which is when you talk about discharge, when a defendant has been restored, there's a process to go before the district court so the district court can determine if the defendant is now competent. And it makes very clear that the district court has to order immediate discharge from facility in which he was hospitalized. So he's out of the hospital, but he's still subject to the Bail Reform Act and general sentencing considerations. And that's what's important here, because right now Mr. Donnelly is not held subject to the order of commitment. He's held subject to the Bail Reform Act. And Strong makes it very clear in the beginning of the discussion in Strong when the case is they're discussing mootness, because in that case the government had argued that because Strong, who had originally been on pretrial release, violated and was detained, his challenge to the commitment order was now moot. And the Ninth Circuit made clear that that's not accurate because the Bail Reform Act is separate, and the district court had the opportunity at any point during this proceeding to choose to release him if there was new information. So there's two separate things. 4241D, to be honest. Let me ask you this. Let's say that Mr. Donnelly had, in fact, been released on bail, but nonetheless, the same motion had been brought. The district court made the same finding that he is, in fact, suffering from, I can't remember the phrase, a mental deficiency of some sort. Remanded him to the custody of the attorney general under 4241D. I take it that that means that he would be taken into custody, even though he had been on bail at that point, correct? If he was ordered into the custody of the attorney general, but there's no requirement that he be ordered immediately. And in fact, that's what happened in Quintero and in Strong. In neither case were they ordered into custody. They were simply, the attorney general was ordered to hospitalize them, and they were waiting for those beds. So in both cases, they were out. Let me just stick with my hypothetical. Because I'm just trying to struggle with this language of the statute. It says the court shall commit the defendant to the custody of the attorney general. I assume that happens immediately. And when it says shall commit to the custody, it's not talking about, oh, we'll just stay at liberty, and the attorney general will notify you in six or eight months when a hospital bed opens up. I assume that means immediately, the defendant is taken into the attorney general's custody. Is that correct? That is not correct, and that's not how it operates. No, he remains in martial custody, and there's a declaration. No, he's been released on bond. Oh, I'm sorry. He's my hypothetical. Oh, sorry. He would just remain out of custody, much like if you had a report date for a sentence. You just remain out of custody until your specific date becomes available. I don't think that's what Congress was envisioning at all. I think the shall commit the defendant to the custody of the attorney general is talking about physically taking the defendant into custody, pending hospitalization. So that's why I don't think you can be right that the two things are separate. I think Congress envisioned them as being basically one and the same, and the four months was all-inclusive of everything. Well, that's true, Your Honor. There's only one court in the country that's held that, and I am not aware of any defendant pending competency that has been given a bed immediately, because I think, as the declaration explains, that would jump someone over all the others. And I admit, there is a long delay. Say we agree with you that they're separate. There's got to be some limitation on the first one. Even if we accept that there's two different steps, it can't be that the first step totally eats up the second step. Otherwise, there's no purpose of putting the four months in there at all. So what do we do? How do we grapple with that? I think there are a couple of options. And I think the Second Circuit, and I'm going to butcher the name, but in Magasabu, the Second Circuit, they talked about, well, is the error, the 4241 error harmless or not? So that goes back to the question of, are they being detained solely because of this restoration order? If he simply remains in the same status, he would have, I think. But I think there's a second remedy, and there's two. I think there's a habeas petition for release from custody. And I also think that there is, as opposed to a due process, more of a failure to prosecute under Rule 48B. And that's separate from the Speedy Trial Act, and I think that requires a showing of prejudice. And I think at a point, and I do not think Mr. Donnelly is here, given the nature of the charges and the possible sentences, but I do think defendants are going to get to a point. I acknowledge that. We cannot hold people indefinitely. But I think that's an individualized determination based on the charges facing the defendant, the possible sentencing outcomes, the reasons for the delay, all the things that the district court really didn't get into in this case. It was under the guise of due process, because he simply found that there's no way you could meet outrageous government conduct. But I do agree with the Court. At some point, it does become unreasonable. Well, but, I mean, and maybe we just have a — that's the problem. I don't like this idea of at some point it becomes unreasonable, because to me, this is unreasonable. I mean, if you can only hospitalize him for four months, then what's the basis to say that we could keep him indefinitely, longer than four months, without ever hospitalizing him? I mean, just the exception would swallow the rule. So is it one day? Is it a week? I mean, you seem to be saying that's unrealistic, too. At this juncture, based on my understanding of the delays, it will be longer than that. It will be significantly longer than that, Your Honor. I believe because he's a danger to the community, he's detained because of that reason. So if we adopt a system where it's the detention, the pretrial detention, because you're a danger or flight risk, is what turns it into unreasonable, that means dangerous defendants are going to benefit from this ruling, whereas defendants like Ms. Quintero, who were out of custody, won't. So I think the better answer is some sort of release program, if one can be made. But we have Mr. Donnelly and his charges, but we could be talking about someone who committed mass murder. And obviously, that would be a different consideration, even if it was taking time to get to that bed. Certainly, I think the declaration, which relied on some information pre-COVID, the Bureau of Prisons is aware there's been a significant increase in the number of defendants who need these proceedings. I think the Mink case and the True Blood case make it clear it's not just the federal government that's struggling with this. I mean, states are struggling with this, too. But the answer isn't dismissal of the indictment against a dangerous defendant. The answer is, we either look at release options, he files a motion for habeas corpus, and at some point, each individual case gets analyzed for failure to prosecute. But we have to have some options to protect the community when faced with these defendants when we're also facing a backlog of beds. And it's not clear to me... Can I ask you about our decision in Mink? Doesn't our decision there pretty much dictate the conclusion that on these facts, a due process violation has already occurred? I don't believe it does, Your Honor, because, in fact, in Mink, many of them were held solely for the restoration. There's no separate analysis of whether they're also held for a separate prong of whatever the equivalent of the Bail Reform Act is under Oregon law. And I think that's important in Jackson, too, because Jackson, that defendant was being held solely in order to possibly be restored. And Mr. Donnelly's not being held solely to be restored. He's being held because he's a danger to the community and a flight risk. And that's what makes him separate and apart. And I think in true blood, this Court also made clear, the seven days is not an end-all, be-all. We have to make a determination based on all the factors. And I think, you know, the District Court didn't, I don't think, analyze every single one of those factors. You can't read the opinion that way because of the due process dismissal standard. But, I mean, I think that's where either the District Court in this case, in the criminal case, or in a habeas case would have to analyze those factors. The statute says the Attorney General has the shell hospitalized defendant in a suitable facility. I assume it's not limited to a particular District. I assume the Attorney General can commit, or can hospitalize a person in any facility across the country. I mean, are you saying there's literally no facility that can house the defendant here for eight months? So, the Bureau of Prisons has three designated facilities across the country that can take people. And that's in the declaration at 2 ER 33. Well, there's actually four, but one is only for women. So there's only three for this defendant. They're at Butner, Springfield, and Devens. And they take approximately six inmates a month for their four-month period. So it's a rolling basis. And I apologize. I mean, I think, it's not in the record, but I think it is still going to be a delay for the defendant because they were not able to do six a month last month. So there are delays. And you simply go, the declaration explains the process. It's all over the country. And there's no priority. The only priority is based on what the specific facility can offer and what they believe the defect might be. And then they're simply put on a waiting list. And at this point, the waiting lists are very long. Except for the, I understand for the women's facility, the wait lists are not that long. But for the male facilities, they are quite long. I mean, everything you're telling us just gets us back into a violation of Jackson, which is it's leading to the conclusion that the only answer here is indefinite detention. I think the problem with Jackson is there was no opportunity for Jackson to file anything to get notice to the court in order to bring back up this notion that he couldn't be restored. And so Mr. Donnelly does have options. He has a habeas option. And he has a, well, he can seek release pending the availability of a hospital bed. But I don't think in Jackson- But you're going to fight that and say, well, no, because he's a danger to society. And so for somebody who, I mean, is a dangerous to society, but also mentally deficient, that's an end run for the government around Jackson. I mean, it's- Well, I mean, eventually he will get a bed and they'll determine whether he can be restored. But I respectfully disagree with my colleague. I do not believe 4246 or 4248, the two civil commitment processes, are triggered until at least some hospitalization has occurred. Because there has to be a finding that they don't believe the defendant can be restored. And I think if you think about the logic of it- That goes to the remedy. You're talking about the remedy now. Right. In terms of- But part of the issue with Jackson was that there was no civil commitment process either. And so eventually Mr. Donnelly will get to a civil commitment process if he can't be restored. When you look at his psychiatric records, I mean, he has done well on medication. He may be restored once he arrives at the facility, though there will be- Do you think- I mean, in your opinion, and I understand the questioning that Judge Watford was giving, which is a very reasonable interpretation of this, but I mean, do you think Congress just, they didn't understand this? I mean, if you accept that it's a two-step process, did they just overlook the first step? Or they thought that it was just going to be a day? They thought it was going to be maybe a week, some de minimis amount of time? I think with the first step, they wanted to make clear, unlike- So for purposes of a competency evaluation, the original one, is the defendant competent or not? They made clear you may commit them to the attorney general, but you could also do it at the facility. And that's what happens here. An independent psychiatrist went in. I think what Congress was saying to the courts is, once we get to this step, the only option is commitment to the attorney general. And that whether you're out of custody or in custody, the only place you're going- And you would say they didn't have, at least under the statute, they didn't have a temporary- No. Do I think Congress necessarily knew the delays? I don't know how they could, because the delays have grown over time. But in the same vein, I don't know that Congress has provided any more funding as these delays have continued to grow since, I mean, I think some of, from the declarations from 2019, we were already at a 17-week wait at that point. And there's been nothing- Why aren't there more cases like this around the country? I'm confused. If this is as big of a problem as you're saying, there should be cases all over the place. I honestly cannot answer that, Your Honor. I mean, I have done many of these that have gone through the district court process, but have not made it to appeal. I've had some cases, sometimes the appeals, this is the first one where I've had an expedited appeal. So in some instances, by the time we get to appeal- They've been- They've been into the bed. So, and we're either at a civil commitment. So we've actually dismissed the criminal case, and they are in civil commitment proceedings. I have one like that. So, you know, I'm not sure why, but I mean, I can tell the court, there are these delays in every single one of these cases, and we've seen a huge uptick in the District of Oregon. So if there's no more questions, I'll- Thank you, counsel. We'll give you two minutes for rebuttal. Okay, thank you. Just starting with the finding of incompetence I'm sorry, the government, this is addressed in the brief extensively. This phrase in Jackson, you're solely committed based on your incompetency and not for other reasons. That phrase is in the due process analysis. It doesn't show up in the statute at all. But Jackson is talking about, you haven't been civilly committed for indefinite reasons, such as danger to self, danger to others, unable to care for self. They talk about it in that, there's a paragraph. And so they've, government takes this line out of context and ignores the surrounding language. They're saying there hasn't been a civil commitment for other indefinite reasons that are available. And so I asked the court to please consider that. The Bail Reform Act in Strong, the court states, they style it as a mootness argument. You could be styled as a harmlessness argument. Strong rejects that. They say the person is able to readdress release once they're back from their competency proceedings. And so in this case, Mr. Donley, the order of detentions in the exerto record, he conceded detention. He has to make no showing to go back before the court to try and get release. And so Strong rejected that argument. The government is saying that there's this lack of resources building. The statute gives the, commitment is mandatory. That's what the government asks for. Hospitalization is mandatory. And they have to put in, be put in a suitable facility. We're not getting involved in that, the court says. That's, we're not getting into endless litigation. That can be a BOP facility. It can be a local state hospital. It can be a private contracted facility. The AG has, and the BOP have a ton of options to deal with a backlog. And the government is saying, hey, now there's this huge backlog because we haven't addressed it and put proper resources into it. But the statute says what the statute says. And it gives the AG broad discretion to deal with it. And that makes the time limit all the more important that we're in those circumstances. And so absent any further questions, I will be done. Okay. Thank you, counsel. Okay. Thank you. Thank you to both counsel for your arguments in the case that Donnelly is now submitted. We'll move on.
judges: WATFORD, NELSON, LEE